I don't have the complete name on this. This is SDC Finance versus what? Align Technology. Okay. Good morning. Good morning. Good morning, Your Honors. You've got Justice Smith, myself, Justice Cobbs, Justice Levin for this panel. This is 19, I think it's 1989. Our case today will go in the following order. First, the appellant will have their opportunity to present their case. We will not ask questions until you're done with your 10 to 15 minutes. Then we will ask questions and the appellee will have their chance. And at the end, we will ask questions. Then it goes back to the appellant for the final response. With that in mind, you may begin. Good morning, Your Honors. My name is Lauren Lowe on behalf of the appellants, SDC Financial LLC and Smile Direct Club LLC. I will collectively refer to them as Smile Direct Club or SDC. May it please the court. This appeal concerns whether the circuit court should have enforced the terms of a confirmed arbitration award and held a line in contempt of court for refusing to tender its membership interests without Smile Direct Club agreeing to inappropriate conditions to the transfer. We are here today because the parties arbitrated a dispute starting in 2018. Smile Direct Club obtained a confirmed arbitration award in 2019 that required a line to tender its membership interests. And nearly two years later, Smile Direct Club still does not have transfer documents signed or acknowledged as valid by a line that confirms the redemption. The circuit court abused its discretion in finding a line not in contempt, even after a line refused to comply with the order and did not establish a valid excuse for its noncompliance. Smile Direct Club asks the court to reverse the circuit court's denial of SDC's motion for rule to show cause and remand for the circuit court to hold a line in civil contempt. I'm not going to rehash all of the facts as I am sure you are familiar with them, but there are facts that are important to understand the context of why what a line did was a violation of the confirmed order and why it matters. A line invested in SDC in 2016 and as part of that they agreed to restrictive covenants. Those restrictive covenants were a key part of the party's agreement. And the operating agreements contain specific rights for SDC and other members in the event that a member violated those restrictive covenants, including the repurchase provision in section 9.3 of the agreement. Under that provision, when a member breaches the restrictive covenants in the operating agreements, the other parties can force the member to tender their interest in the company in exchange for payment of the capital account balance before the breach. The key here is that the company and the other members have the right to get the breaching member out of the company, and the process is laid out in the agreement to expedite getting them out. And if the member refuses to cooperate with that transfer, the company can unilaterally close the repurchase under a power of attorney, which is in section 9.3 H of the agreement. And what happened here is that a line did violate the restrictive covenants and Smile Direct Club and the other members exercise their right to repurchase a line's membership interest. The parties arbitrated the case before arbitrator Gerald Saltarelli, and ultimately the arbitrator ruled in SDC's favor on March 4 of 2019. He issued a detailed 36-page award with findings and conclusions, and among other things, ordered that by April 3 of 2019, a line shall tender its membership interest in SDC in exchange for payment in the amount of a line's capital account as of October 31, 2017, under the terms contained in section 9.3. Smile Direct Club immediately petitioned to confirm the award, and a line did not seek to challenge, to vacate, or to modify the award. The circuit court confirmed it in its entirety on April 29 of 2019, but a line did not do as they were required. Instead, they approached the required tender of their interest like a negotiation, where they could make demands and condition their tender on SDC's agreement to a line's demand for additional rights, even if a line did not have a basis in the award or the operating agreement to do that. Now, the documents were largely agreed, except there were specific discrete issues that a line ultimately demanded SDC agree to in order to effectuate that transfer. I will focus on three of those here. First, that a line demanded SDC agree that a line reserved its rights to challenge the amount of the repurchase, and that any challenge could only increase the amount of the repurchase. That SDC agree on a higher interest rate than that was provided in the agreement. And third, that Smile Direct Club forfeit any right to assign the promissory note in the future unless a line agreed. A line also objected to Smile Direct Club moving forward with exercising its rights under 9.3H, which was the power of attorney to close the transaction, and said that any attempt to do so would be a nullity and without legal effect. SDC would not agree to hamper its own rights and agree to things outside of the agreement, so it moved forward with unilaterally closing that repurchase under the power of attorney. But a line continued to contest the validity, stating that it was and is a legal nullity, including an arbitration filings that it submitted in July of 2019. SDC filed a motion for rule to show cause and raised the discrete issue of whether a line's failure to tender its membership interest, absent SDC's express agreement to a line's conditions to transfer, violated the confirmed final award. But both a line and ultimately the circuit court went down a different rabbit hole. Not that issue, but whether the repurchase price that appeared in both parties' documents was the correct repurchase price. That was not the issue. Again, it was the same repurchase price in both documents. The issue was the demand that SDC agreed to certain conditions for the transfer, and the court ultimately denied the motion for rule to show cause. This was an error and abuse of discretion because the evidence was undisputed and established that a line had committed indirect civil contempt. Specifically, the circuit court confirmed the final award in its entirety. The final award unambiguously stated the terms for a line's compliance. A line failed to transfer its membership interest in compliance with the final award, and a line's compliance with the final award's stated terms would fully resolve the dispute. I will also briefly address specifically why a line's conduct violated the confirmed final award and why that deprived SDC of a benefit or advantage. First, whether a line violated the award. The only tender documents a line would provide contained the inappropriate conditions to transfer of its interest, and it refused to acknowledge the validity and remove its objections to the transfer under the power of attorney. First, a line's demand that SDC agree to a line's reservation of rights. There's no provision in the operating agreement or the final award that gives a line the right to force SDC to agree a line could challenge the amount of the repurchase. Beyond even that, nothing permitted a line to condition its tender on SDC agreeing that if a line challenged the amount, it would amend the note and the repurchase price could only go up. A line's insistence on including those conditions to tender and refusal to proceed to tender without them violated the award. A line also challenged the power of attorney closing. Even in paragraph nine of its arbitration demand, which is in the record as SECC 481, they say there was a patent conflict of interest and the transfer was a legal nullity. SDC does not agree, but where is the confirmation of the tender? Does a line agree that there was a transfer or not? The fact SDC has to ask that question is indicative of a line's failure to comply with the order. The same is true for the other items I noted, the interest rate and restrictions on the repurchase imposed by a line. A line took the position it was entitled to more than what was provided in the agreement, seeking a higher interest rate and trying to hold SDC hostage to its own consent on assignment in the future. But SDC would be giving up rights under both of those provisions, accepting a higher interest rate than the Internal Revenue Bulletin interest rate, and giving up the fact that contractual rights are fully assignable under Tennessee law, which was the governing law in the operating agreement. This is not consistent with the provisions in the agreement or section 9.3. All of this constitutes a failure to tender its membership interest in the company as ordered in the final award. It had to be within the confines of parameters of the repurchase provisions, and it was not. Second, whether this deprived SDC of a benefit or advantage. The circuit court may hold the litigant in indirect civil contempt for failing to do something ordered by the court, resulting in the loss of a benefit or advantage to the opposing party. A line's failure to tender its membership interest absent these conditions and its subsequent objection to SDC's effectuation of that transfer deprived SDC of a benefit. SDC is in legal limbo. It has no legal documentation of the effectuation that is signed by a line or that is acknowledged as valid by a line. A line can change its position at any time and is challenging the validity of SDC's power of attorney redemption now. This also deprives SDC of the finality of its arbitration award. Instead, this sends the message that SDC has to seek serial arbitrations when instead it is entitled to have its hard fought award enforced and a clear and compliant transfer of a line's membership interest. Yeah. For all of these reasons, and those stated in SDC's briefs, Smadra Club asked this court to reverse the circuit court's denial of its motion for rule to show cause and remand for the circuit court to hold a line in civil contempt. I'm happy to answer any questions you have. I do not have any questions, but that's based entirely on the competent, rather competent brief that you wrote and the very concise and applicable argument that you made this morning. Thank you very much. I have one question, Justice Lavin. I have one question, Ms. Lowe. So, how was valuation determined at the arbitration proceeding? What evidence was presented? Yeah. So, again, you know, our position is that's really not an issue here. But there was a line's chief financial officer testified at the trial as to the amount of the capital account balance. This was because a line raised a defense. It was really their primary defense to the repurchase. That repurchase would work a forfeiture. And that was the finding that arbitrator Saltarelli made was the evidence showed it was $54 million. That was the amount that Mr. Marucci, a line CFO, testified to. And then a line's attorneys took that amount and actually in the pre-hearing briefs, post-hearing briefs, made the argument that the primary purpose, according to them, was SEC seeking to obtain a line's membership interest for the $54 million. And how, just tell me, how was the interest rate determined? Was that a specific percentage rate in the award or did the award simply refer back to the operating agreement? The award referred back to the operating agreement, which contains the interest rate in the repurchase provisions in 9.3. A single interest rate or is there any possibility that the operating procedures contain more than one interest rate? So there are two interest rates in the provision. The first one sets forth the interest rate under the note. And then it goes into a discussion of default and the rights on default. And then the second interest rate is for the default. It's a higher interest rate for the default provision. I have no other questions. Thank you. Good. All right. I guess, Apelli, you may proceed. Thank you, Your Honor. Your Honors, and if it may please the court, Michael Whalen on behalf of Apelli Aligned Technology Incorporated. Your Honors, this case and this appeal at its core is about SDC's improper use of the contempt process in an attempt to achieve substantive ends, all in contravention of Illinois' strong public policy in favor of arbitration. The fundamental question that SDC put before the circuit court in its contempt petition was, in fact, whether Aligned's attempt to secure its rights under a contract between the parties, the operating agreement, amounted to contempt of the circuit court's confirmation order. The circuit court rightly and fairly determined that it did not. And in doing so, identified exactly what SDC's true aim was. That they were attempting to preclude Aligned from initiating a subsequent arbitration over a post-arbitration dispute about the appropriate repurchase price of Aligned's membership interests under the confirmed award. As Justice Cobbs just asked and identified, there's a specific provision within the operating agreement, which was then cited in the award, which directed the parties to determine the value of the repurchase right. And that this was not at all addressed in the award. Again, the exact repurchase price that was necessary. But by this appeal, SDC wishes to substitute its own judgment for that of the circuit court, which conclusively dismissed any notion of contempt. While SDC has changed its positions within its briefs below and here and even here today between what it considers to be the core issue and its contempt petition. The issue is undoubtedly whether the price that SDC unilaterally determined to pay Aligned without any deliberation or process. And without any reference to the actual terms of the operating agreement can be fairly challenged by Aligned in a subsequent arbitration proceeding per the terms of the operating agreement. The circuit court correctly determined that the confirmed award did not include any mandate. As to what the redemption price should in fact be other than directing SDC to pay a price consistent with the terms of the operating agreement and that section 9.3 C of the operating agreement. Instead, the circuit court read the confirmed award and thereby its own confirmation order exactly as it was written. That it requires compliance with terms stated in the contract between the parties. Ultimately, here there's actually no dispute between the parties that Aligned did exactly what the confirmed award required. Tender its shares back to SDC. SDC's only complaint here is that Aligned attempted to reserve its rights to challenge SDC's own non compliance with the award. Again, the award directed that SDC pay a specific purchase price as determined consistent with the operating agreement. And that's what hasn't occurred here. Both parties agree that there's been a tender of membership interests. And because neither party can test whether Aligned actually did tender its interests and the confirmed award is silent on the appropriate interest rate and the assignability terms of any redemption. Aligned can't be in contempt of the confirmation order and SDC cannot carry its heavy burden on appeal. Thus, SDC's appeal faces substantive and procedural failings. We'll address both of those in turn. As Ms. Lowe noted, and we agree the facts are, we're sure, largely known to the court, but we'd like to highlight a couple key facts. That brought us to this position today. The prior award was confirmed by the circuit court, or sorry, was issued by the arbitrator on March 4, 2019. And specifically in the relief section where the arbitrator set out what each of the parties duties and obligations were under the award. The arbitrator said, among other things, that by no later than April 3, 2019, Aligned shall tender its membership interests in SDC. In exchange for payment from SDC, in the amount of Aligned's capital account as of October 31, 2017, under the terms contained in section 9.3C and D of the operating agreement. And that language can be found at record page C381. That was the sum and substance of what the arbitrator ordered the parties to do regarding the tender of Aligned's interests. This award of relief did not specify the amount of the payment to be made, but rather directed SDC to determine the appropriate amount consistent with the applicable provisions of the parties contract. The primary section cited in that award of relief, section 9.3C, which can be found at secured record site FCC 339, makes specific reference to a defined term, capital account, as a basis for any repurchase. Capital accounts are maintained by SDC for its members and also reported by SDC to its members, including Aligned, on yearly tax documents. In fact, for the year 2017, the year that the arbitrator noted in the relief he awarded, SDC reported Aligned's capital account on those tax documents to be $97 million. So upon issuance of the award, Aligned immediately asked SDC for an accounting of its capital account amount under the rules identified by the arbitrator and set forth in the terms of the award, and SDC refused. SDC ignored Aligned's request. It ignored the $97 million that it itself had previously calculated and reported on tax documents both to Aligned and the IRS, and insisted on the $54 million figure that was testified to by one of Aligned's witnesses and included in dicta in the award, but which was not reflected in the relief section of the final award. Thus, in order to protect itself from SDC's refusal to follow the terms of the award, Aligned simply reserved and asked for acknowledgement of the fact that it was reserving its right to seek a proper purchase price in a subsequent arbitration. It did not ask SDC to make any substantive concessions. It merely identified an aware-as clause that can be found at SEC 440 of the secured record that, in fact, it was reserving the right to disagree with the purchase price, but that it would move forward with the tender because it wanted to comply with the award. The Circuit Court confirmed the award on April 29, 2019, and again, that's nearly a month after Aligned completed its tender consistent with the terms of the award, and Aligned did not object to confirmation below. So an important fact here is that all of the disputes around Aligned's compliance occurred well before the Circuit Court even took up the issue of confirmation, and indeed, the Circuit Court confirmed the award in that context. None of this conduct occurred post-confirmation. As here today, SDC has a heavy burden to carry to convince this court that it's appropriate to overturn the Circuit Court's contempt denial. SDC must make a two-part showing to this court, and this court must give deference to the Circuit Court's determinations at each step. First, SDC must show that the factual findings of the Circuit Court were against the manifest weight of the evidence. Second, SDC must show that the Circuit Court's legal determinations amounted to an abuse of the Circuit Court's discretion, and it cannot make either showing. There is no evidence before the Circuit Court that Aligned in any way contravened the confirmation order, and the Circuit Court rightly held as much. Moreover, even if there was some evidence of record that Aligned acted inconsistent with the confirmation order, SDC would then have to demonstrate that Aligned's conduct was willful, which it cannot do, either directly or in accordance with the high standard of review in this court. Regarding the factual conclusions of the Circuit Court, the Circuit Court correctly determined that Aligned's reservation of rights to challenge SDC's noncompliance with the confirmed award did not violate the award, and thus that conclusion was not against the manifest weight of the evidence. In fact, the Circuit Court's conclusion in this regard was entirely correct, let alone against the manifest weight of the evidence, because the relief provided for in the confirmed award did not specify a purchase price, but only specified the section of the operating agreement that contained the procedures for determining that price. It defies reason to suggest that Aligned's attempt to preserve its rights under the exact provisions cited by the arbitrator and confirmed by the court could be inconsistent with the confirmed award. But again, even if there was some inconsistency between the tender requirement and Aligned's conduct, that would not suffice to overturn the Circuit Court's denial, because the manifest weight of the evidence standard provides deference to the trial court's fact-finding, where even divergent inferences could have been drawn from unspecified facts. Next, the Circuit Court also did not abuse its discretion in reaching its legal conclusions in denying SDC's contempt petition. The Circuit Court decided to read the awarded relief, both in the award and then subsequently in its own confirmation order, exactly as it was written. A Circuit Court only abuses its discretion when its ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view that it adopted. SDC attempts to argue that the Circuit Court did abuse its discretion by concluding that the arbitrator's decision means exactly what it says, that there's no specified purchase price. But not only is the Circuit Court's reading not unreasonable, but in fact, just with its factual findings, it's the only reasonable reading of the confirmed award. And again, here, I'd like to highlight SDC's actual position, and it shouldn't be forgotten in the context of the abuse of discretion standard. SDC's claim that the Circuit Court failed to appreciate the actual issue that it had put before it in the contempt proceeding, and that SDC's concern is that its ability to put forward a defense in a subsequent arbitration may have been prejudiced by Aligned's attempt to reserve its rights. But in fact, that's not what it argued in front of the Circuit Court. Indeed, in its contempt petition, it specifically identified Aligned's contempt as its refusal to adopt the $54 million figure. But even crediting its position that it now takes for the first time on appeal at page 17 of its opening brief, there still is no prejudice to SDC. The arbitration that it was worried about, and where it believed its defenses would be prejudiced, has all but concluded. There was a five-day evidentiary hearing held just last month, and SDC was able to put forward those preclusion arguments. The preclusion arguments that it claims here would have been prejudiced by Aligned's reservation of rights. In fact, the arbitrator rejected those arguments and did not allow it to dismiss the arbitration. Ultimately, SDC cannot show any abuse of discretion by the Circuit Court, and thus cannot justify any result other than affirmance of the denial of the contempt petition. But as noted previously, even if there's some basis to demonstrate that Aligned did contravene the terms of the Circuit Court's order, there can be no showing of willfulness here. SDC's claim of willful conduct by Aligned necessarily relies on its own unilateral reading of the confirmed arbitration award. In fact, willful contempt requires that the alleged contemner here, Aligned, understands the Court's order but chooses to ignore the mandate. All along and replete throughout the record on appeal, you can see that Aligned had a very clear understanding of what the Circuit Court's confirmation order said and meant. Now, if that determination is wrong, that still doesn't arise to willful noncompliance. In fact, the best evidence that Aligned's noncompliance was not willful is the fact that the Circuit Court read its order the exact same way as Aligned. It believed it to say that there was no purchase price mandated, and that the parties had to engage in a process set forth in the operating agreement under Section 9.3c, and that this whole dispute is a post-arbitration dispute that itself is subject to arbitration. And that point is... You're getting close to your time limit. Yes, I'm right at the end, Justice Smith. I will conclude now and just note that contempt as defined under Illinois law is conduct that embarrasses, hinders, or obstructs the Court itself, and the Circuit Court did not find that it itself was in any way embarrassed, hindered, or obstructed. So we believe that there's no factual or legal basis for overturning the Circuit Court's well-reasoned contempt denial. And we've also identified procedural failings, which we'll rest on in our brief, that we think also preclude an appeal here or any finding of contempt. And I'm happy to take any questions you may have, Your Honors. Questions? Let's go to... Who is it, then, in your judgment, what's your position, and who it is or what body it is that's going to determine what the quote award is supposed to be? Your Honor, as it turns out now, because the parties can't agree, that body is a subsequent arbitrator. Now, there's plenty of scope under the operating agreement for the parties to agree. It's our position, if you look at the award that references Section 9.3C and Section 9.3D, that arbitrator Saltorelli actually contemplated a process for the parties agreeing, because 9.3D actually sets out a valuation procedure for the parties to engage in evaluation of those interests. So there's a number of post hoc procedures that allow for the parties to engage in a process, and then, if not, there's a mandatory arbitration clause in the operating agreement. So to answer your question, Your Honor, in the first instance, it would be the parties, and then, failing agreement, it would be before an arbitrator, which is what the parties are engaged in now. Well, how is that then consistent with Section 12.1 of the operating agreement that says, and I'm quoting, any claim, controversy, or other dispute among them and arising out of or relating to this agreement, its enforcement, or its interpretation, is to be submitted to binding arbitration, again, quoting here, before a single arbitrator in Chicago? How does what your position is, and I understand what it is, you just stated it, how does that comply with Section 12.1, if now, all of a sudden, you've got to get a different arbitrator involved? Because, as the Circuit Court concluded, this is a post-arbitration dispute, so every new dispute, Your Honor, would then be subject to a single arbitrator. So it's a line's position, and it's evident in the award that there was no dispute over the repurchase price during the prior arbitration, because that related solely to a line's breach. It was only at the moment that the award came down and that arbitrator self-really said, yes, a line you breached, now you have to tender your interests under Section 9.3c, that Section 9.3c even came into play. So this is a wholly separate dispute. So following that award, the parties had to revert to Section 9.3c, and then if they don't agree, then they go to Section 12.1 that you identified, Your Honor, and engage in a single, in an arbitration before a single arbitrator there, which is what they're currently doing. Okay, that's all I have. I just have one question. So at the first arbitration, when the $54 million figure was being bandied about, what was Align doing at that point? Because you heard that figure. Yes, Your Honor. So at that point, at the time of the prior arbitration, Align's interests were worth approximately $500 million to $600 million. And Align made a legal argument that the provision, Section 9.3c, which SDC had invoked, but again was not applicable at that point because there was no breach determination. Align's position was that a repurchase for $500 million less than market value would have been a forfeiture and thus unenforceable under applicable tenancy law. The arbitrator did not adopt that position. So while there was evidence adduced by Align where it was attempting to show the difference in value, the then value versus potential prior value, it was not an argument about the actual repurchase price under 9.3c. It was in aid of this forfeiture argument. And crucially, arbitrator Saltarelli did not adopt that reading. He carried forward that $54 million in dicta in the award. And he could have, if that was the price, he could have placed that in the release. He could have said Align has to tender its interest for $54 million. But notably, he didn't. He sent the parties to Section 9.3c and D of the operating agreement. Just one more question. And it really relates back to Ms. Lowe's earlier statement about continuing post-arbitration proceedings. How many of these are permissible under the operating agreements? I mean, this is assuming a final one. The second one is the final one. But is it conceivable that there will be even a post-post-arbitration proceeding? Your Honor, it would be Align's position that that would be very unlikely and that this is a fairly unique circumstance because the arbitrator's direct order was go employ this term of the operating agreement. If the arbitrator, again, picked a round figure and said tender and pay this much, then there wouldn't be scope for a subsequent arbitration. But here the arbitrator specifically contemplated post-arbitration conduct under the terms of the operating agreement. So there it does open the opportunity for subsequent arbitral dispute. I have no other questions. Thank you, Your Honor. Sonny may respond. Yes. Thank you. Just a few brief points here. So relating to the finality of arbitrations, as we pointed out in our briefs and I stated in my argument, arbitration awards are not meant to be a starting point to plunge the parties into further litigation. SDC obtained a confirmed arbitration award here. It had requirements for compliance and SDC should be able to have that award enforced by the court upon confirmation and not be dragged into another arbitration about compliance with those terms. The second point I would make is that the repurchase price, the actual amount of the repurchase price, again, it's not an issue that needs to be decided at this point. The same amount was in both parties' documents and has been addressed at length in other places. But the question is whether a line could require SDC to agree that it reserved its rights to a challenge in the tender documents. We still do not have tender documents for the transfer of interest that are agreed upon as valid or that a line has not objected to as a legal nullity. And although a line is now saying that SDC has fully redeemed its membership interest, it's taken a different position in the arbitration, and that's why we need this confirmed tender, which is really an enforcement of the final award in the confirmed order. So the last point I will make is that the arbitration is ongoing. There has not been a final determination as to SDC's defenses in that arbitration. I just wanted to correct the record on that. The parties are still briefing the matter. There will be arguments later on and ultimately an award, but SDC's defenses in that case have not been decided. So at this point, unless there are further questions you would like me to address, ask that the court reverse the circuit court's denial of the motion for rule to show cause and remand to hold a line in contempt. Any questions? None here, but thank you both for your excellent briefs and argument. It's a treat for us when we have lawyers who really know what they're doing and you're clearly capable. We appreciate it. Thank you very much. Thank you very much for your arguments and your briefs. I'm just worried this is going to be a perpetual case. We may see you again at the rate you're talking. But anyway, thank you, and we'll let you know as soon as the three of us agree.